O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SMITH, ) <br> Plaintiff, ) <br> vs. ) <br> MICHAEL J. ASTRUE, ) <br> Commissioner of Social Security, ) <br> Defendant. ) | Case No. EDCV 11-296 RNB <br><br> ORDER AFFIRMING DECISION OF COMMISSIONER |

Plaintiff filed a Complaint herein on February 16, 2011, seeking review of the Commissioner's denial of his applications for disability insurance and Supplemental Security Income benefits.  In accordance with the Court's Case Management Order, the parties filed a Joint Stipulation ("Jt Stip") on October 14, 2011.  Thus, this matter now is ready for decision.[1]

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues that plaintiff is raising

---

[1] The decision in this case is being made on the basis of the pleadings, the Administrative Record ("AR"), and the Joint Stipulation filed by the parties.  In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

as the grounds for reversal and remand are as follows:

    1.    Whether the Administrative Law Judge ("ALJ") properly considered whether plaintiff meets and/or equals Listing 1.04.

    2.    Whether the ALJ properly considered the consultative examiner's findings.

    3.    Whether the ALJ made a proper residual functional capacity ("RFC") assessment.

    4.    Whether the ALJ posed a complete hypothetical to the vocational expert ("VE").

## DISCUSSION

**A.  Reversal is not warranted based on the ALJ's alleged failure to make a proper Listings determination.**

Disputed Issue No. 1 is directed to the ALJ's finding that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (hereinafter the "Listings"), where the Commissioner has set forth certain impairments that are presumed to be of sufficient severity to prevent the performance of work. See 20 C.F.R. §§ 404.1525(a), 416.925(a). Specifically, plaintiff contends that the ALJ erred because he only provided analysis of plaintiff's mental impairments, and did not "properly consider any of the musculoskeletal system disorders in his meet or equal analysis, specifically Listing of Impairment 1.04."

At Step Three of the Commissioner's five-step sequential evaluation process, the ALJ must determine whether a claimant's impairment or combination of impairments meets or equals a listed impairment. See Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). However, the burden of proving disability based on the Listings rests with the claimant. See, e.g., Crane v. Barnhart, 224 Fed. Appx. 574, 578 (9th Cir. 2007); Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005); Roberts

v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The mere diagnosis of a listed condition does not establish that a claimant "meets" the Listings. See Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990). "For a claimant to show that his impairment matches a listing, it must meet **all** of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990); see also 20 C.F.R. §§ 404.1525(d), 416.925(d). Thus, an impairment must correspond in diagnosis, severity, and duration in order to meet a listed impairment.[2] To "equal" a listed impairment, a plaintiff "must establish symptoms, signs, and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment 'most like' the claimant's impairment." Tackett, 180 F.3d at 1099.

The Ninth Circuit has held that "[a]n ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment," and that "[a] boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001) (citing Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990)). However, the Ninth Circuit further held in Lewis, 236 F.3d at 513-14, that an ALJ's lack of formal analysis and findings at Step Three will not constitute reversible error when the ALJ "discussed and evaluated evidence supporting his conclusion" in a different section of his decision; and with respect to equivalency, when plaintiff "offered no theory, plausible or otherwise, as to how his [impairments] combined to equal a listed impairment." See also Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005) ("[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or

---

[2] Unless the particular listing otherwise specifies, the durational requirement is 12 months. See 20 C.F.R. §§ 404.1525(c)(4); 416.925(c)(4).

compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.")

Here, the ALJ discussed and evaluated the evidence supporting his conclusion that plaintiff's physical impairments were not of disabling severity in the parts of his two decisions addressing plaintiff's RFC. Although represented by counsel at both administrative hearings, plaintiff never argued that his physical impairments met or equaled Listing 1.04. Moreover, plaintiff has not even purported to satisfy his burden of showing that he met **all** of the specified medical criteria of Listing 1.04. The two letters from Dr. Phatak cited by plaintiff in the Joint Stipulation have no bearing whatsoever on that issue. Likewise, the other medical evidence of record cited by plaintiff in the Joint Stipulation supports the diagnosis of a musculoskeletal impairment, but does not establish that plaintiff met **all** of the specified medical criteria of Listing 1.04. Further, to the extent that plaintiff may be purporting to invoke the "medical equivalence" concept in support of her Listings arguments, the Court finds and concludes that plaintiff also has not met his burden. Under Social Security Ruling[3] ("SSR") 96-6p, the ALJ is permitted to assume from the signatures of State agency physicians on their evaluation and transmittal forms that "consideration has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." Here, the record before the ALJ included evaluation and transmittal forms signed by State agency physicians reflecting their initial disability determination and their disability determination on reconsideration. (See AR 63-66.)

For the foregoing reasons, the Court finds and concludes that reversal is not warranted here based on the ALJ's alleged failure to make a proper Listings determination.

---

[3]     Social Security Rulings are binding on ALJs. See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

B.  **Reversal is not warranted based on the ALJ's alleged failure to make a proper RFC assessment.**

In Disputed Issue No. 2, plaintiff contends that the ALJ failed to properly consider the September 20, 2006 psychovocational evaluation report done by Dr. Courtney, a consultative examiner. (See Jt Stip at 12-17.) In Disputed Issue No. 3, plaintiff contends that, as a result of the ALJ's failure to properly consider the opinions of disability rendered by plaintiff's treating physician, Dr. Phatak, in letters dated July 28, 2006 and April 16, 2007,[4] and the ALJ's failure to properly consider Dr. Courtney's evaluation, the ALJ erred in his assessment of plaintiff's RFC. (See Jt Stip at 19-23.) Since the ALJ did find at Step Two of the Commissioner's sequential evaluation process that plaintiff suffered from "a minimally severe mental impairment consisting of bipolar affective disorder and a history of polysubstance abuse" (see AR 11), the Court construes Disputed Issue Nos. 2 and 3 as both directed to the ALJ assessment that plaintiff had the physical RFC to perform light work, subject to certain non-exertional limitations, and the mental RFC to "perform simple, routine, repetitive tasks that are unskilled, entry level." (See AR 13.)

    1.   Dr. Phatak's letters

The law is well established in this Circuit that a treating physician's opinions are entitled to special weight because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. See

---

[4] In his July 28, 2006 "to whom it may concern" letter, Dr. Phatak wrote that plaintiff "is currently disabled due to his chronic neck pain," and that "[t]emporary disability has been granted from 4/17/06 to 1/27/07." (See AR 300.) In his April 16, 2007 "to whom it may concern" letter, Dr. Phatak wrote that plaintiff "suffers from chronic low back and neck pain"; that despite his recent neck surgery, plaintiff "continues to suffer from severe low back pain due to degenerative disc disease"; and that it was his conclusion that plaintiff "is disabled at this time due to his neck and back pain from Jan. 27, 2007 to October 16, 2007." (See AR 564.)

McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996); Baxter v. Sullivan, 923 F.3d 1391, 1396 (9th Cir. 1991). Where, as here, the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. See, e.g., Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) ("A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record."); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

In his January 20, 2009 decision, the ALJ did provide the following rationale for not crediting the opinion of disability reflected in Dr. Phatak's July 28, 2006 letter (see AR 16):

> *The Appeals Council noted that the claimant's treating physician, Dr. Phatak, opined that the claimant had been granted temporary disability from April 17, 2006 to January 27, 2007 (Exhibit 2F; Exhibit 11F, pp. 9-10). I give little weight to this opinion. This period of disability is temporary and not for 12 consecutive months. For Social Security purposes, disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to*

6

> *last for a continuous period of not less than 12 months. The assessment of temporarily totally disabled has nothing to do with the claimant performing work under the reduced residual functional capacity found herein. Temporarily totally disabled is a term of art which means a person cannot return to work being done at the time of injury, in this case that of a tow truck driver described by the vocational expert as medium in exertion and semi-skilled. A decision or determination by any other agency about whether an individual is disabled is based on its rules. The Social Security Administration must make a disability determination based on Social Security law; therefore, an opinion or determination made by another agency that an individual is disabled is not binding on the Administrative Law Judge (20 CFR 404.1504).*

Plaintiff contends that the ALJ erred because he only considered Dr. Phatak's July 28, 2006 letter and ignored Dr. Phatak's April 16, 2007 letter, which when considered in conjunction with the earlier letter, constitutes an opinion by plaintiff's treating physician that, from April 17, 2006 to October 16, 2007 (a period that meets the consecutive 12-month durational requirement), plaintiff was disabled due to his neck and back pain. However, the Court is unable to reconcile Dr. Phatak's April 16, 2007 opinion that plaintiff would continue to be disabled to October 16, 2007 with plaintiff's concession at the September 25, 2007 administrative hearing that, within a month of that opinion, he had been released (presumably by his treating physicians) to return back to work. (See AR 46-47.) Moreover, as the Commissioner points out, the other part of the ALJ's rationale for not crediting Dr. Phatak's July 28, 2006 letter would apply with equal force to Dr. Phatak's April 16, 2007 letter. The Court deems plaintiff's failure to reply to this and the Commissioner's other contentions regarding Dr. Phatak's two letters as a concession to the correctness of the Commissioner's position.

Accordingly, the Court's finds and concludes that the ALJ's alleged error in failing to properly consider the opinions reflected in Dr. Phatak's letters does not undermine the ALJ's RFC assessment.

2. <u>Dr. Courtney's evaluation report</u>

The same rules cited above also apply to an examining physician's opinions. To reject the uncontradicted opinion of an examining physician, an ALJ must provide "clear and convincing" reasons. Even if contradicted by another doctor, the opinion of an examining doctor can only be rejected for "specific and legitimate" reasons that are supported by substantial evidence in the record. <u>See</u> <u>Regennitter v. Commissioner</u>, 166 F.3d 1294, 1298-99 (9th Cir. 1999); <u>Lester v. Chater</u>, 81 F.3d 821, 830-31 (9th Cir. 1995); <u>see also</u> <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005).

The ALJ discussed Dr. Courtney's evaluation report in his January 20, 2009 decision. The ALJ stated (<u>see</u> AR 15-16):

> *The Appeals Council noted that the above examiner said the claimant appeared to suffer from mood swings, problems with expression of anger, and problems with interpersonal relationships. I give little weight to the opinion of the consultative examiner. These symptoms were not evident when examined on April 18, 2007 in which there was no evidence of mania/hypomania. Mood was bright and he smiled easily (Exhibit 11F, p. 4). A psychiatric treating note dated May 19, 2007, indicates that mirtazapine had been prescribed and the claimant reported improved sleep and felt that his depression was more stable with just a few gentle dips with depression. He denied manic or hypomanic symptoms. He was noted to be beginning truck driving school later in the month. The claimant was able to laugh and joke and no longer was having crying spells. He denied suicidal/homicidal*

> *ideation, was calm with no evidence of anxiety, speech was normal and thought processes were linear and goal directed (Exhibit 12F, p. 17). A depression screening test in June 2007 was negative (Exhibit 12F, p.13).*
>
> *Treating notes dated August 1, 2007, indicate that the claimant had stopped taking his psychiatric medications (Exhibit 12F, p.6). He felt he did not need it and was sleeping fine without medication. He also stated that he had been fired from his truck driving job due to taking the medication. He denied any symptoms of mania, depression or psychosis. His doctor informed him that he was using bad judgment by not staying on his medications and that he was putting himself at risk for a mental health relapse. The claimant requested his doctor sign a form from the trucking company stating that he was not being prescribed medication. The doctor documented on the form "no medications were prescribed today - at his request, he wants to stay off medications."*
>
> *The medical record indicates that the claimant has been clean and sober from drugs and alcohol since December 2005 (Exhibit 11F, p. 4; Exhibit 12F, p. 17). The claimant's mental impairment was grounded in substance abuse and there is no evidence that without such abuse any mental impairment would exist at all. There is not the slightest credible evidence of the existence of any of the B criteria in 2006.*

The Court concurs with plaintiff that the evidence of plaintiff's improved mental condition following his surgery that the ALJ cited in itself is not determinative of the severity of plaintiff's mental impairment during the relevant period here (i.e., November 16, 2005 to May, 2007). However, the Court concurs with the

Commissioner that has failed to identify what specific opinion of Dr. Courtney was improperly rejected by the ALJ. As noted above, the ALJ did find at Step Two of the Commissioner's sequential evaluation process that plaintiff suffered from "a minimally severe mental impairment," and the ALJ did include in his RFC assessment a limitation to "simple, routine, repetitive tasks that are unskilled, entry level." Plaintiff has failed to point to any "opinion" rendered by Dr. Courtney regarding plaintiff's mental functional limitations that is inconsistent with the limitation assessed by the ALJ. Nor could plaintiff do so, since Dr. Courtney did not purport to render any opinions on plaintiff's mental functional limitations.

Accordingly, the Court's finds and concludes that the ALJ's alleged error in failing to properly consider Dr. Courtney's September 20, 2006 psychovocational evaluation report does not undermine the ALJ's RFC assessment.

**C.     Reversal is not warranted based on the ALJ's alleged failure to make a proper vocational determination.**

It follows from the Court's rejection of plaintiff's contention, that in assessing plaintiff's RFC, the ALJ failed to properly consider Dr. Phatak's opinions of disability and Dr. Courtney's evaluation, that reversal is not warranted based on the alleged failure of the ALJ to pose a complete hypothetical to the vocational expert. Hypothetical questions posed to a vocational expert need not include all alleged limitations, but rather only those limitations substantiated by the evidence of record that the ALJ finds to exist. See, e.g., Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001); Magallanes v. Bowen, 881 F.2d 747, 756-57 (9th Cir. 1989); Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir. 1988); Martinez v. Heckler, 807 F.2d 771, 773-74 (9th Cir. 1986). Here, the hypothetical posed to the vocational expert at the November 7, 2008 administrative hearing did comport with the limitations that the ALJ found to exist. (See AR 13, 59, 480-82.)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED: November 3, 2011

_____
ROBERT N. BLOCK
UNITED STATES MAGISTRATE JUDGE